

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 12, 1951

Hon. D. A. Davidson, Director
Livestock Sanitary Commission
    of Texas
3320 West Seventh Street
Fort Worth, Texas          Opinion No. V-1372

                           Re:  Legality of cattlemen's
                                using individual hold-
                                ing brands which are
                                the same as brands
                                specified by law to
                                identify diseased cat-
Dear Mr. Davidson:              tle.

        Your request for an opinion refers to certain
Acts of the Legislature which provide for the branding
of diseased cattle on the left jaw with the letter "T"
for those with tuberculosis, and the letter "B" for
those having Bang's Disease, and then you state as fol-
lows:

        "In the first of these Acts the letter
    'T' is designated for the identification of
    cattle found, by recognized methods, to be
    positive reactors to the tuberculin test;
    and in the second Act, the letter 'B' is
    designated for the identification of cattle
    found to be positive reactors to the recog-
    nized test for Brucella Abortus.  It has
    now come before this Department and its
    field representatives that individual cat-
    tlemen are using the letter 'T' in some
    instance, and the letter 'B' in others,
    as individual holding brands.  Investiga-
    tions further reveal these holding brands
    are recorded with the County Clerks of the
    Counties wherein the owners reside, identi-
    fying these brands as having been legally
    recorded.

        "In the instance of the brand 'T', it
    was found upon investigation that some fif-
    teen individual owners in the western part

of the State have this brand recorded, with
its position designated on the animal as
the left jaw, as a holding brand.

"Since separate Acts of the Legisla-
ture have definitely set out and designated
the letter 'T', in the instance of tuber-
culin reactors, and the letter 'B' in the
instance of Brucellosis reactors, as a
distinct identification of animals found
positive reactors to either of these dis-
eases, as the case may be, the question
then arises as to whether or not individual
owners in this State have a legal priority
in recording either of these brands as hold-
ing brands, even though the said recording
was done prior to, or since the passage of
these separate Acts referred to.  Can these
owners legally continue the use of either
of these brands as holding brands, even
though the Acts of the Legislature became
effective later than the original recording
in some instances?

"This matter has caused considerable
confusion in our field work, as to positive
identification of animals bearing either of
these brands, which by Legislative Act in-
dicate diseased animals."

The pertinent part of Article 1525b, Section
14, V.P.C., provides:

"All cattle that show a positive reac-
tion when tested for tuberculosis by a vet-
erinarian recognized by the Live Stock Sanitary
Commission for the performance of such testing
are hereby declared to be a public nuisance
and a menace to the health of other live stock
with consequent and serious danger to human
life and health.  It shall be the duty of said
veterinarian to brand or have branded all of
said positive reactors 'T' on the left jaw with
a hot iron, which letter 'T' shall be not less
than three inches high.  . . ."

Article 1525d, Section 1, V.P.C., provides:

"When an accredited representative of the Livestock Sanitary Commission of Texas or an accredited representative of the United States Secretary of Agriculture or an authorized veterinarian makes an agglutination blood test for Bang's Disease of cattle in this State he shall furnish to the owner of such cattle in writing data showing that certain identified animal or animals have reacted to the test and are affected by the disease, it shall be the duty of the said authorized veterinarian or accredited representative of the Livestock Sanitary Commission within forty-eight (48) hours to brand each reactor or animal affected with the disease on the left jaw with the Letter 'B' and place a metal tag in the ear of such animal with numbers thereon and report in writing to the Livestock Sanitary Commission of Texas the numbers on such tags."

Article 1525e, Section 1, V.P.C., provides:

"It shall hereafter be unlawful for any person to sell or otherwise dispose of any cattle for milk purposes when he knows or has reason to believe said cattle are infected with Bang's Disease. If any person shall sell or otherwise dispose of any cattle having the brand of the letter 'B' on the left jaw, the same shall be taken as prima-facie evidence in any Court of competent jurisdiction, that such person knew that said cattle was infected with Bang's Disease."

The purpose of the above statutes is to help protect the cattle industry and the public from the ravages of the spread of tuberculosis and Bang's Disease. They are enacted in the exercise of the police power of the State and even though the rights of individuals are curtailed to some extent, the action will not be questioned except where the exercise of the power is clearly unreasonable and arbitrary. City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038 (1940). When any law has the effect to protect the public health or to prevent or minimize economic waste in such an industry as that of stock raising in this State, it is for the public

Hon. D. A. Davidson, page 4 (V-1372).

welfare and benefit of the people of this State. Neal v. Boog-Scott, 247 S.W. 689 (Tex. Civ. App. 1923); 39 Tex. Jur. 377, Stock Laws, Sec. 62.

Before the passage of such statutes, any person could adopt, use, and record the letters "T" and "B", to be placed on the left jaw of their animals, as individual holding brands under Article 6890, V.C.S., which provides as follows:

> "Every person who has cattle, hogs, sheep or goats shall have an ear mark and brand differing from the ear mark and brand of his neighbors, which ear mark and brand shall be recorded by the county clerk of the county where such animals shall be. No person shall use more than one brand, but may record his brand in as many counties as he deems necessary."

However, since the Legislature has enacted Articles 1525b, Section 14, and 1525d, Section 1, V.P.C., designating and setting apart the letters "T" and "B" for use as brands set out therein, we are of the opinion that these provisions impose an exception under Article 6890 above or a repeal by implication of so much of that part of Article 6890 as would allow persons to use such designated letters as holding brands, and that persons no longer can legally use such letters on the left jaw of animals as holding brands. To hold otherwise would result in considerable confusion in the enforcement of the statutes designed to protect the cattle raising industry and the public welfare of the people of this State. The use of the markings for diseased animals is clearly intended to be exclusive and their use for other purposes is unlawful.

39 Tex. Jur. 137, Statutes, Section 73, provides:

> "Although it contains no repealing clause, a new enactment abrogates any former act on the same subject, with which it clearly and manifestly conflicts, to the extent of the inconsistency or repugnancy between the two. This constitutes a repeal by implication, or, more properly speaking, by necessary implication."

Also see 1 Sutherland, Statutory Construction (3rd Ed. 1943) 461, Section 2012.

It is pointed out that no statute literally prohibits the use of the brands described in Articles 1525b, Section 14, and 1525d, Section 1, V.P.C., for purposes other than to identify diseased cattle. However, we believe that such prohibition exists by necessary implication when the mechanics set up for effecting the purpose of such statutes are considered.

The repugnancy here involved is only as to the use of the letters "T" and "B" on the left jaw, and since the Legislature has set them apart for a designated use in the interest of the industry and the public, we hold that no person can legally continue to use such letters on the left jaw as a holding brand under Article 6890, V.C.S., even though such person had recorded such letters before the enactment of Articles 1525b, Section 14, and 1525d, Section 1, V.P.C.

This opinion is limited strictly to the legality of such continued use of the designated letters by such owners. We express no opinion as to the legal consequences of a continuation of the use of such markings in an illegal manner. However, self-interest should sufficiently discourage their use by cattle owners as private brands.

## SUMMARY

Individual owners cannot legally continue to use the letters "T" or "B" on the left jaw of their cattle as holding brands in view of Articles 1525b, Section 14, V.P.C. (Acts 41st Leg., 1st C.S. 1929, ch. 52, p. 114), and 1525d, Section 1, V.P.C. (Acts 45th Leg., R.S. 1937, ch. 431, p. 875, as amended, Acts 50th Leg., R.S. 1947, ch. 262, p. 461), which provide for the use of the same letters on the left jaw of cattle

Hon. D. A. Davidson, page 6  (V-1372).

as brands for cattle having tuberculosis
or Bang's Disease.

Yours very truly,

APPROVED:

PRICE DANIEL
Attorney General

Ned McDaniel
State Affairs Division

By *Clinton Foshee*

Charles D. Mathews
First Assistant

Clinton Foshee
Assistant

CF:jmc